**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                    |   |                        |
|------------------------------------|---|------------------------|
|                                    | ) | Chapter 7              |
| IN RE:                             | ) |                        |
|                                    | ) | Case No. 06-10297 (MFW)|
| PATRICK ANDERSON and               | ) |                        |
| SANDRA BANKOWSKI-ANDERSON,         | ) |                        |
|                                    | ) |                        |
|                     Debtors.       | ) |                        |

## MEMORANDUM OPINION[1]

Before the Court is the Emergency Petition for Rule to Show Cause for Violation of Bankruptcy Discharge Injunction (the "Show Cause Petition") filed by Patrick and Sandra Anderson (the "Debtors"). The Sussex County Federal Credit Union (the "Creditor") opposes the relief requested by the Debtors. For the reasons stated below, the Court will grant the Debtors' request in part and deny it in part.

I. BACKGROUND

The Debtors filed a joint voluntary petition under chapter 7 on March 31, 2006. After an extension of time was requested and granted, the Debtors filed their Schedules and Statement of Financial Affairs on April 28, 2006. In their Statement of Intention filed with the Schedules, the Debtors stated their intention to reaffirm six secured debts, including four due to

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

the Creditor, one of which is secured by the Debtors' 2004 Ford Explorer (the "Vehicle").  Notwithstanding that Statement, the Debtors have filed no reaffirmation agreements.

The meeting of creditors was held pursuant to section 341 on May 9, 2006, after which the chapter 7 trustee filed a report of no distribution.  The Debtors' discharge was entered on July 6, 2006, and the case was closed on July 11, 2006.

On July 12, 2006, the Creditor repossessed the Vehicle.  In a letter dated that same date, the Creditor advised the Debtors of the repossession and stated, inter alia, that "[t]his is not an attempt to collect a debt" but "[y]ou will be liable for any deficiency."  (Ex. A to Show Cause Petition.)

The Debtors filed a Motion to reopen their case, which was granted, to permit them to file the Show Cause Petition.  A hearing on the Debtors' Show Cause Petition was held on July 26, 2006.  At the conclusion of the hearing, the Debtors asked for authority to brief the issue of whether the "pass through" option enunciated by the Third Circuit in In re Price, 370 F.3d 362 (3d Cir. 2004), had remained viable after enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  On August 3, 2006, the Debtors filed a post-hearing letter brief addressing that and additional issues.  The Creditor filed a responsive letter brief on August 11, 2006.  The matter is ripe for decision.

2

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A), (B), (E) & (O).

III. <u>DISCUSSION</u>

A discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).

The Debtors argue that the Creditor violated the discharge injunction both by repossessing the vehicle and by sending the letter indicating that they would be held personally liable for any deficiency.

A.  <u>Repossession of the Vehicle</u>

It is well-settled that "a bankruptcy discharge extinguishes only one mode of enforcing a claim -- namely, an action against the debtor <u>in personam</u> -- while leaving intact another -- namely, an action against the debtor <u>in rem</u>." <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 84 (1991).  "Thus, liens on property remain enforceable after discharge unless avoidable under the Bankruptcy Code." <u>Holloway v. John Hancock Mut. Life Ins. Co. (In re Holloway)</u>, 81 F.3d 1062, 1063 n.1 (11th Cir. 1996).

Self-help repossession of property is an _in rem_ action that
would not appear to implicate the discharge injunction.  The
Debtors insist, however, that the Creditor's repossession of the
Vehicle was wrongful under both the Bankruptcy Code and Delaware
state law.  The Debtors appear to argue that wrongful
repossession is akin to an _in personam_ action that implicates the
protections of the discharge injunction.  The Court need not
decide whether this is the case, however, because it concludes
that the repossession was not wrongful.

      1.   The "Fourth Option" Post-BAPCPA

The Debtors assert that because they have stayed current
with their payments, the Vehicle loan "passed through" the
bankruptcy case unaffected.  They rely on the Third Circuit
decision in _Price_, in which the Court held that the enumeration
of three options for treatment of secured property under former
section 521(2) - i.e., surrender, redemption or reaffirmation -
did not preclude the debtor from exercising a "fourth option" –
i.e., retaining the property while remaining current on payments.
370 F.3d at 372.

The Creditor argues that several changes to the Bankruptcy
Code wrought by BAPCPA render the decision in _Price_ no longer
correct.  The Court agrees.

4

a.   Section 521(a)(2)(A)

The Third Circuit in Price found nothing in the Bankruptcy Code that precluded the "fourth option."  It emphasized the following language of section 521: "the debtor shall file with the clerk a statement of his intention with respect to retention or surrender of such property and, if applicable, specifying [sic] that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property."  11 U.S.C. § 521(a)(2)(A) (as amended, emphasis added).[2]  The Debtors note that this language has not been changed by any of the amendments contained in BAPCPA and, therefore, argue that the "pass through" option remains available.  See, e.g., In re Donald, 343 B.R. 524, 532 (Bankr. E.D.N.C. 2006).

b.   Section 521(a)(6)

The Creditor argues that, while amendments to section 521(a)(2)(A) may not have eliminated the fourth option, the addition of section 521(a)(6) has.  That section provides:

> [I]n a case under chapter 7 of this title in which the
> debtor is an individual, [the debtor shall] not retain
> possession of personal property as to which a creditor
> has an allowed claim for the purchase price secured in
> whole or in part by an interest in such personal
> property unless the debtor, not later than 45 days
> after the first meeting of creditors under section

---

[2]   Under BAPCPA, section 521(2)(A) was renumbered 521(a)(2)(A), but the relevant language addressed by the Price Court was not changed.

```
341(a), either -
     (A) enters into [a reaffirmation] agreement
     with the creditor pursuant to section 524(c)
     with respect to the claim secured by such
     property; or
     (B) redeems such property from the security
     interest pursuant to section 722.
If the debtor fails to so act within the 45-day period
referred to in paragraph (6), the stay under section
362(a) is terminated with respect to the personal
property of the estate or of the debtor which is
affected, such property shall no longer be property of
the estate, and the creditor may take whatever action
as to such property as is permitted by applicable
nonbankruptcy law . . . .
```

11 U.S.C. § 521(a)(6).  Therefore, the Creditor argues that,

because the Debtors did not reaffirm or redeem the Vehicle by

June 23, 2006, the Debtors are no longer entitled to retain

possession of the Vehicle.  Its repossession of the Vehicle was

therefore not improper.

The Debtors assert, however, that section 521(a)(6) is not

applicable because the Creditor does not have "an allowed claim"

for the purchase price of the Vehicle.  Id.  They assert that no

proof of claim was filed by the Creditor in this case and,

therefore, that no claim was allowed.[3]

The Creditor argues that the interpretation suggested by the

Debtors would mean that section 521(a)(6) is not available for

secured creditors in any no-asset chapter 7 case.  In no-asset

cases, the notice sent to creditors advises that claims should

---

[3]  "Typically, for a claim to be an allowed claim, a proof
of claim must be filed."  Donald, 343 B.R. at 536.

6

not be filed until they get notice that assets have been located
from which a distribution can be made.[4]  See Fed. R. Bankr. P.
2002(e).  The Creditor argues that Congress must have meant that
section 521(a)(6) applies to any legitimate purchase-money
secured claim, even if no proof of claim is filed.[5]

While the Creditor's argument has appeal, it would require
the Court to ignore the plain language of the Code.  Congress in
drafting section 521(a)(6) used the phrase "allowed claim," not
merely "claim."  The Court cannot ignore this choice of words.
"It is our duty to give effect, if possible, to every clause and
word of a statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).
Accord Donald, 343 B.R. at 536 ("This Court respectfully
disagrees that the word 'allowed' should be ignored. . . .
Filing a proof of claim is a reasonable prerequisite to receiving
the relief afforded by § 521(a)(6).").  But see In re Rowe, 342
B.R. 341, 349 (Bankr. D. Kan. 2006) (concluding that reference to

---

[4]  In this case, as is typical of no-asset cases, the
trustee filed a report of no distribution and no claims were
required to be filed.

[5]  The Debtors disagree, arguing that Congress meant section
521(a)(6) to apply only if a proof of claim is filed.  They argue
that it would apply, for example, if a case were converted from
chapter 13 and posit that Congress meant to protect creditors in
that circumstance more than creditors in a case originally filed
under chapter 7.  The Court cannot conceive why Congress would
grant additional protections to creditors whose debts might have
been partially paid in a chapter 13 case.  At any rate, it is
unnecessary for the Court to fathom why Congress drafted section
521(a)(6) the way it did; it is simply necessary to apply the
plain meaning of that statute.

legislative history of section 521(a)(6) was appropriate because it was one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters" (citing United States v. Ron Pair Enters., 489 U.S. 235, 242 (1989))).  The Court is reluctant to follow the Rowe decision and ignore the use of the term "allowed claim" by Congress.  It is not necessary to decide this issue, however, because other amendments contained in BAPCPA clearly support the Creditor's argument.

c.   Sections 521(a)(2)(C) & 362(h)(1)

Although the specific language on which the Third Circuit relied in Price has not been changed, section 521(a)(2) has been amended to add the following highlighted provision to section 521(a)(2)(C): "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)."  11 U.S.C. § 521(a)(2)(C).

Section 362(h) is entirely new and states:

(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) -
    (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it

8

> and, if retaining such personal property,
> either redeem such personal property pursuant
> to section 722, enter into an agreement of
> the kind specified in section 524(c)
> applicable to the debt secured by such
> personal property, or assume such unexpired
> lease pursuant to section 365(p) if the
> trustee does not do so, as applicable; and
> (B) to take timely the action specified in
> such statement, as it may be amended before
> expiration of the period for taking action,
> unless such statement specifies the debtor's
> intention to reaffirm such debt on the
> original contract terms and the creditor
> refuses to agree to the reaffirmation on such
> terms.

11 U.S.C. § 362(h)(1).

New section 362(h) provides that the stay will be terminated and the collateral will no longer be property of the estate if the debtor fails to file and perform a statement of intention to surrender, redeem, reaffirm or, in the case of leased property, assume the unexpired lease.  It is significant that Congress used the term "allowed" claim in section 521(a)(6) but not in section 362(h).  See Duncan, 533 U.S. at 173 (noting that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion" (citation omitted)); Donald, 343 B.R. at 537 (stating that "the use of a particular phrase in one statute but not in another 'merely highlights the fact that Congress knew how to include such a limitation when it wanted to'" (quoting In re Coleman, 426 F.3d 719, 725 (4th Cir. 2005))).

9

Nor is there any mention of a fourth option in section 362(h), or even language (such as the Third Circuit found in Price) that would suggest a fourth option exists.  This conclusion is supported by most courts to address the issue.  In Rowe the Court concluded that:

> The "fourth option," which would otherwise still be allowed because of the continued use of the "if applicable" phrase in § 521(a)(2)(A), is prohibited by § 362(h)(1)(A), which requires the debtor [to] . . . choose between one of three options: (1)Surrender; (2) retention coupled with redemption; or (3) retention coupled with reaffirmation of the debt.

342 B.R. at 346-47.  See also In re Craker, 337 B.R. 549, 551 (Bankr. M.D.N.C. 2006) (concluding that automatic stay terminated by section 362(h) where debtor filed statement of intention that did not indicate one of the three options in that section but instead stated the debtor's intention to retain the collateral and continue to make regular payments); In re Faught, No. 05-43548, 2006 WL 151884, at *1 (Bankr. W.D. Ky. Jan. 19, 2006) (stating that "simply being current is not a valid defense to a stay relief motion. . . .  Retaining property and continuing to make regular payments is not one of the options available under the Bankruptcy Code."); In re Brown, No. 05-35011, 2006 WL 871284, at *1 (Bankr. N.D. Fla. March 13, 2006) (concluding that the stay terminated automatically under section 362(h)(1)(A) when the debtors did not timely file their statement of intention).  But see Donald, 343 B.R. at 534 (holding that "[t]ermination of

10

the stay, however, does not mean that the 'ride-through' option
is eliminated [because] [t]he Fourth Circuit Court of Appeals has
held that 'a default-on-filing clause in an installment loan
contract was unenforceable as a matter of law'" (quoting In re
Belanger, 962 F.2d 345, 348 (4th Cir. 1992))).

In this case, the Debtors did file their statement of
intention as required.  They did not, however, perform their
stated intention (i.e., reaffirm the debt).  Therefore, the Court
concludes that under the plain language of section 362(h), the
stay was terminated on June 8, 2006, thirty days after the first
date set for the meeting of creditors (and almost a month prior
to the Debtors' discharge).[6]  After that time, the Creditor was
free to exercise any rights against the Vehicle that were
otherwise available to it under Delaware state law.  In re
Boring, 346 B.R. 178, 181 (Bankr. N.D. W.Va. 2006) ("Terminating
the automatic stay gives [a secured creditor] the right to take
whatever action is permissible under nonbankruptcy law.").

     2.   Ipso Facto Default

The Debtors argue that the Creditor did not have the right
to repossess the Vehicle under Delaware state law because they
were not in payment default on their loan.

---

[6]   11 U.S.C. § 521(2)(B).  Of course, the stay would have
terminated anyway on July 6, 2006, when the Debtors received
their discharge.  Id. § 362(c)(2)(C).

11

The Creditor argues that it did have the right to repossess the Vehicle because section 14 of the Loanliner Open-End Plan provides that it is a default if the Debtors file bankruptcy. (Ex. to Creditor's Answer at 4.)

The Debtors argue initially that the section cited by the Creditor is contained in a document that was not signed by Mrs. Anderson, who they assert is the owner of the Vehicle.  They argue that there is nothing in the Loanliner Open-End Voucher and Security Agreement signed by Mrs. Anderson which states that the filing of bankruptcy is a default.  (See Ex. B to Show Cause Petition.)

The Court finds that the Debtors are wrong on their alleged facts.  First, the Debtors' Schedules state that the Vehicle is jointly owned by the Debtors.  Second, the Loanliner Security Agreement, admittedly signed by Mrs. Anderson, states: "If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan." (Id. at § 9.)  Mr. Anderson did sign the Plan.  (Ex. to Creditor's Answer at 4.)

The Debtors argue further, however, that the provision in the Plan which makes the filing of bankruptcy a default is unenforceable in bankruptcy as an ipso facto clause.  See, e.g., Belanger, 962 F.2d at 348 (pre-BAPCPA, holding that "a default-on-filing clause in an installment loan contract" is

12

"unenforceable as a matter of law").

The Court concludes that the Debtors' argument is without merit, because the BAPCPA amendments made such clauses enforceable in these circumstances. <u>Boring</u>, 346 B.R. at 180-81. BAPCPA added the following subsection to section 521:

> (d) If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property . . . as to which a creditor holds a security interest . . . nothing in this title shall prevent or limit the operation of a provision in the underlying . . . agreement that has the effect of placing the debtor in default under such . . . agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.  Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

11 U.S.C. § 521(d).

The Debtors are correct, however, that section 521(d) by itself does not permit repossession.  As noted by the Court in <u>Donald</u>:

> The significance of § 521(d)'s treatment of ipso facto clauses is simply that when a debtor fails to timely take the actions required by §§ 521(a)(6), or 362(h)(1) or (2), the new statutory language eliminates limitations previously imposed by the Bankruptcy Code on the operation of ipso facto clauses.  Section 521(d) does not create a new statutory remedy to be used by creditors, and does not write ipso facto clauses into contracts where none exist.

343 B.R. at 539.  <u>See also</u> <u>Rowe</u>, 342 B.R. at 351 (concluding that section 521(d) provides only that ipso facto clauses are enforceable, and that the court must still determine if, under

state law, the clause creates a default which would allow repossession).

The Debtors argue that repossession in the absence of payment default is impermissible under Article 9 of the Delaware Commercial Code.  The Court disagrees.  Section 9-609, which provides that a secured party may exercise self-help repossession "[a]fter default," does not distinguish between "payment" defaults and other kinds of defaults.  6 Del. C. § 9-609.  What constitutes a "default" is set forth in the parties' security agreement.  Under section 9-201, "a security agreement is effective according to its terms between the parties" except as otherwise provided by state consumer protection laws or laws regulating "the rates, charges, agreements and practices for loans, credit sales, or other extensions of credit."  <u>Id.</u> § 9-201(a) & (b).

The Debtors argue that section 4311(2) of title 6, which governs "retail installment contracts," is just such a consumer protection law, and renders the ipso facto default provision unenforceable in this case.  That statute provides, in relevant part:

> No contract . . . shall contain any provision by which:
> . . .
> (2) In the absence of the buyer's default in the performance of any obligations, the holder may, arbitrarily and without reasonable cause, accelerate the amount and maturity of any part or all of the amount owing thereunder.

14

6 Del. C. § 4311(2).

The Court need not address the effect of this statute on ipso facto default provisions because the statute does not apply to motor vehicle retail installment contracts. See 6 Del. C. § 4301(9) (defining a "contract" subject to that chapter as a "contract for a retail installment sale"); id. § 4301(10) (defining "retail installment sale" as a "sale of goods"); id. § 4301(3) (excluding "motor vehicle[s]" from the definition of "goods"). Motor vehicle retail installment contracts are governed by section 2907 of title 5, which contains no limitation similar to section 4311(2) of title 6. Compare 5 Del. C. § 2907 with 6 Del. C. § 4311(2).

The Court agrees with the Creditor that none of the authority cited by the Debtors supports their assertion that ipso facto default provisions are unenforceable in motor vehicle installment sale agreements as a matter of Delaware state law. Consequently, the Court concludes that the Creditor was permitted to repossess the Vehicle under the express terms of the agreement between the parties.

      3.   <u>Breach of the Peace</u>

The Debtors argue finally that the Creditor violated section 9-609(b)(2) of the Delaware Commercial Code by causing a breach of the peace. Specifically, the Debtors allege that the Creditor's tow truck operator repossessed the Vehicle from the

15

parking lot of Mrs. Anderson's place of employment in the middle
of the work day, over her objection, and in the presence of Mrs.
Anderson's coworkers, damaging one of the coworkers' car in the
process.

The Debtors may well have a cause of action under the
Delaware Commercial Code for failure to comply with section 9-
609(b)(2).  See 6 Del. C. §9-625.  See generally 4 James J. White
& Robert S. Summers, Uniform Commercial Code § 34-8 (5th ed.
2000) ("The debtor's opposition, however slight and even if
merely oral, normally makes any entry or seizure a breach of the
peace.").  The only matter before this Court, however, is the
Creditor's alleged violation of the discharge injunction.  The
Court concludes that the Creditor's breach of the peace in the
conduct of an otherwise rightful repossession did not violate the
discharge injunction because it did not transform the in rem
action against the Vehicle into an in personam action against the
Debtors.  If the Debtors wish to pursue their state-law remedies
against the Creditor, they may do so in state court.

          B.   Creditor's Letter

The Debtors argue that the Creditor violated the discharge
injunction when it sent the letter dated July 12, 2006, because
that letter said that the Debtors would continue to be liable for
any deficiency if the collateral was sold for less than the
amount owed.  (Ex. A to Show Cause Petition.)

16

The Creditor argues that the letter did not violate the discharge injunction because it clearly stated, in bold print: "This letter is not an attempt to collect a debt; it is being mailed to comply with Article 9 of the Delaware Code." (Id.)

The Court disagrees.  The language cited by the Creditor does not negate the language later in the letter asserting that the Debtors would remain liable for any deficiency.

The Creditor argues that it was required by section 9-613 of the Delaware Commercial Code to include the language regarding the deficiency.  That statute, however, does not support the Creditor's assertion.  Section 9-613 merely requires that any notice of disposition of collateral include the name of the debtor and the secured party, a description of the collateral, the method, time, and place of disposition of the collateral, and a notice that the debtor is entitled to an accounting of the unpaid indebtedness.  6 Del. C. § 9-613.  Nothing in the statute or the form notification set forth in section 9-613(5) refers to the debtor's liability for any deficiency.

Furthermore, any personal liability of the Debtors was discharged on July 6, 2006.  Accordingly, the Court concludes that the Creditor's letter violated the discharge injunction as an "act to collect" a discharged debt.  See 11 U.S.C. § 524(a)(2).

17

C.    Remedy for Violation of Discharge Injunction

Unlike a violation of the automatic stay, violation of the discharge injunction does not give rise to statutory damages. Compare 11 U.S.C. § 362(k)(1) (stating that "an individual injured by any willful violation of [the automatic] stay . . . shall recover actual damages . . . and, in appropriate circumstances, may recover punitive damages") with id. § 524 (lacking any such language). Cf. Joubert v. ABN Mortg. Group, Inc. (In re Joubert), 411 F.3d 452, 456 (3d Cir. 2005) (noting "the weight of circuit authority" holds that section 524 does not give rise to a statutory right of action). Instead, courts use their inherent civil contempt power under section 105 to provide a remedy for violations of the discharge injunction. See, e.g., In re Meyers, 344 B.R. 61, 64-65 (Bankr. E.D. Pa. 2006).

The Debtors ask the Court to hold the Creditor in contempt, to order the Creditor to return the Vehicle, and to award the Debtors attorneys' fees and costs of $2,000 and punitive damages of $1,500.

The Court will hold the Creditor in contempt and fine it $500, but it finds that there is insufficient basis in law or fact for the remainder of the relief requested by the Debtors.

"Sanctions for civil contempt serve two purposes: (1) to coerce the disobedient party into compliance with the court's order; and (2) to compensate for losses sustained by the

18

disobedience." <u>In re Meyers</u>, 344 B.R. at 66.  The Court
acknowledges that the Debtors were disturbed and inconvenienced
by the Creditor's repossession of the Vehicle.  Only the
Creditor's letter, however, violated the discharge injunction.
The Debtors have not alleged any "losses" stemming from receipt
of the letter that would support an award of compensatory
damages.  Although the Debtors incurred attorneys' fees and costs
to reopen their case and prosecute the instant action, they did
so with the avowed purpose of getting the Vehicle back.  The
Court does not believe they would have gone to such trouble if
they knew that relief was not available because the Creditor's
repossession of the Vehicle did not violate the discharge
injunction.  Accordingly, the Court does not find that any of
those fees and costs were occasioned by the Creditor's letter.

Absent any "loss" on the part of the Debtors, the only
purpose of contempt sanctions is to deter future conduct.  Now
that the Court has held that the language in the Creditors'
letter purporting to hold the Debtors liable for the discharged
deficiency claim violates section 524(a) of the Bankruptcy Code,
the Court finds that a sanction of $500 will be sufficient to
deter the Creditor from including such language in future
correspondence with these (or other) debtors.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will hold the Creditor in contempt of Court and impose a sanction of $500 for violation of the discharge injunction, but will deny the remainder of the Debtors' requested relief.

An appropriate order is attached.

                                    BY THE COURT:


Dated: August 31, 2006              Mary F. Walrath
                                    United States Bankruptcy Judge